UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

THOMAS JOSEPH CUTAIA,

     Petitioner,

v.                                CASE NO. 6:10-cv-1170-Orl-31GJK

SECRETARY, DEPARTMENT OF
CORRECTIONS, et al.,

     Respondents.

_____/

## **ORDER**

This case is before the Court on a petition for habeas corpus relief filed pursuant to 28 U.S.C. § 2254 by Thomas Joseph Cutaia ("Petitioner") (Doc. 1, filed August 5, 2010). Upon consideration of the petition, the Court ordered Respondents to show cause why the relief sought in the petition should not be granted (Doc. 10). Thereafter, Respondents filed a response in compliance with this Court's instructions and with the *Rules Governing Section 2254 Cases in the United States District Courts* (Doc. 12). Petitioner filed a reply to the response (Doc. 16).

Petitioner raises eleven claims in his petition. He asserts that: (1) no probable cause existed for the victim's initial approach towards Petitioner; (2) self-defense justified his actions; (3) his convictions for both carrying a concealed weapon and possession of a firearm by a convicted felon violated double jeopardy; (4) the inclusion of lesser included offenses in the jury instructions violated double jeopardy; (5) the trial court refused to subpoena his defense witnesses; (6) the trial court unconstitutionally limited his cross examination of a prosecution witness; (7) he was not formally indicted by a grand jury for the offenses charged in the information; (8) Due Process was violated by the use of a six person jury at his trial; (9) his Fifth, Sixth, Eighth, and Fourteenth Amendment rights

were violated by the use of Florida's 10-20-Life sentencing statute; (10) his rights were violated by state law discovery violations; and (11) a conspiracy has rendered the state process ineffective to protect his rights (Docs. 1, 2). Upon due consideration of the petition, the response, the reply, and the state-court record, this Court concludes, for the reasons set forth below, that the petition should be denied.

## I. Procedural History

On April 23, 2007, Petitioner was charged by second amended information with attempted second degree murder (count one), unlawful possession of a firearm by a convicted felon (count two), and carrying a concealed firearm (count three) (App. A at 215).[1] Petitioner was initially found incompetent to stand trial. *Id.* at 57. After competency was restored, Petitioner chose to represent himself. *Id.* at 91. Count two was severed from the other charges and separate trials were held. *Id.* at 221.

After his first jury trial on the charges of attempted second degree murder and carrying a concealed firearm, Petitioner was found guilty of the lesser included offense of aggravated battery and guilty as charged of carrying a concealed firearm (App. A at 377-79). At his second jury trial for unlawful possession of a firearm by a convicted felon, Petitioner was found guilty as charged. *Id.* at 422. Petitioner was sentenced to twenty years in prison on count one, five years in prison on count two, and fifteen years in prison on count three. All sentences were to run consecutively. *Id.* at 380-87, 431-36.

On April 7, 2009, Petitioner's convictions and sentences were *per curiam* affirmed by the

---

[1]Unless otherwise noted, citations to the record refer to the appendices filed with Respondents' response to the petition on December 30, 2010 (Docs. 14, 15).

Florida Fifth District Court of Appeal (App. G at 137); *Cutaia v. State*, 17 So. 3d 1239 (Fla. 5th DCA 2009). Petitioner sought review of the decision with the Florida Supreme Court which dismissed the case for lack of jurisdiction. *See Cutaia v. State*, 13 So. 3d 468 (Fla. 2009). Petitioner also sought review of his conviction and sentences with the United States Supreme Court and was denied on November 2, 2009 (App. K at 1).

Petitioner filed his first petition for writ of habeas corpus with this Court on May 28, 2008 (App. I at 3; Case no. 6:08-cv-579-19DAB). The petition was dismissed without prejudice because Petitioner's direct appeal was pending in the state court (App. I at 24). The instant petition was timely filed on July 30, 2010 (Doc. 1).

## II.     Governing Legal Principles

Because Petitioner filed his petition after April 24, 1996, this case is governed by 28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). *Penry v. Johnson*, 532 U.S. 782, 792 (2001); *Henderson v. Campbell*, 353 F.3d 880, 889-90 (11th Cir. 2003). The AEDPA "establishes a more deferential standard of review of state habeas judgments," *Fugate v. Head*, 261 F.3d 1206, 1215 (11th Cir. 2001), in order to "prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law." *Bell v. Cone*, 535 U.S. 685, 693 (2002); *see also Woodford v. Visciotti*, 537 U.S. 19, 24 (2002) (recognizing that the federal habeas court's evaluation of state-court rulings is highly deferential and that state-court decisions must be given the benefit of the doubt).

### A. *Standard of Review Under the AEDPA*

Pursuant to the AEDPA, habeas relief may not be granted with respect to a claim adjudicated on the merits in state court unless the adjudication of the claim:

(1)        resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2)        resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). The phrase "clearly established Federal law," encompasses only the holdings of the United States Supreme Court "as of the time of the relevant state-court decision." *Williams v. Taylor*, 529 U.S. 362, 412 (2000).

The United States Supreme Court has clarified the meaning of "contrary to" and "unreasonable application" as used in 28 U.S.C. § 2254(d)(1):

> [Section] 2254(d)(1)'s "contrary to" and "unreasonable application" clauses have independent meanings. A federal habeas court may issue the writ under the "contrary to" clause if the state court applies a rule different from the governing law set forth in our cases, or if it decides a case differently than we have done on a set of materially indistinguishable facts. The court may grant relief under the "unreasonable application" clause if the state court correctly identifies the governing legal principle from our decisions but unreasonably applies it to the facts of the particular case. The focus of the latter inquiry is on whether the state court's application of clearly established federal law is objectively unreasonable, and we stressed in *Williams* that an unreasonable application is different from an incorrect one.

*Bell v. Cone*, 535 U.S. 685, 694 (2002).

Finally, under § 2254(d)(2), a federal court may grant a writ of habeas corpus if the state court's decision "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." A determination of a factual issue made by a state court, however, shall be presumed correct, and the habeas petitioner shall have the burden of rebutting the presumption of correctness by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

### B. Standard for Ineffective Assistance of Counsel

The United States Supreme Court in *Strickland v. Washington*, 466 U.S. 668 (1984), established

4

a two-part test to determine whether a convicted person is entitled to relief on the ground that his counsel rendered ineffective assistance: (1) whether counsel's performance was deficient and "fell below an objective standard of reasonableness"; and (2) whether the deficient performance prejudiced the defense. *Id*. at 687-88. In *Lockhart v. Fretwell*, 506 U.S. 364, 372 (1993), the United States Supreme Court clarified that the prejudice prong of the test does not focus solely on mere outcome determination; rather, to establish prejudice, a criminal defendant must show that counsel's deficient representation rendered the result of the trial fundamentally unfair or unreliable.

A court must adhere to a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance. *Id*. at 689-90. Thus, "a court deciding an actual ineffectiveness claim must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." *Id*. at 690; *Gates v. Zant*, 863 F.2d 1492, 1497 (11th Cir. 1989). As observed by the Eleventh Circuit Court of Appeals:

> The test [for ineffective assistance of counsel] has nothing to do with what the best lawyers would have done. Nor is the test even what most good lawyers would have done. We ask only whether some reasonable lawyer at the trial could have acted, in the circumstances, as defense counsel acted at trial. Courts also should at the start presume effectiveness and should always avoid second guessing with the benefit of hindsight. *Strickland* encourages reviewing courts to allow lawyers broad discretion to represent their clients by pursuing their own strategy. We are not interested in grading lawyers' performances; we are interested in whether the adversarial process at trial, in fact, worked adequately.

*White v. Singletary*, 972 F.2d 1218, 1220-21 (11th Cir. 1992) (citation omitted). Under those rules and presumptions, "the cases in which habeas petitioners can properly prevail on the ground of ineffective assistance of counsel are few and far between." *Rogers v. Zant*, 13 F.3d 384, 386 (11th Cir. 1994).

### C. *Exhaustion and Procedural Default*

The AEDPA precludes federal courts, absent exceptional circumstances, from granting habeas

relief unless a petitioner has exhausted all means of available relief under state law.  Specifically, the

AEDPA provides, in pertinent part:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that–
>
> (A)  the applicant has exhausted the remedies available in the courts of the State; or
>
> (B)
>
>> (I)  there is an absence of available State corrective process; or
>>
>> (ii)  circumstances exist that render such process ineffective to protect the rights of the applicant.

28 U.S.C. § 2254(b)(1).  Exhaustion of state remedies requires that the state prisoner "fairly presen[t]

federal claims to the state courts in order to give the State the opportunity to pass upon and correct

alleged violations of its prisoners' federal rights." *Duncan v. Henry*, 513 U.S. 364, 365 (1995) (citing

*Picard v. Conner*, 404 U.S. 270, 275-76 (1971)).  The petitioner must apprise the state court of the

federal constitutional issue, not just the underlying facts of the claim or a similar state law claim.

*Snowden v. Singletary*, 135 F.3d 732 (11th Cir. 1998). The United States Supreme Court has explained

that:

> [c]omity concerns dictate that the requirement of exhaustion is not satisfied by the mere statement of a federal claim in state court.  Just as the State must afford the petitioner a full and fair hearing on his federal claim, so must the petitioner afford the State a full and fair opportunity to address and resolve the claims on the merits.

*Keeney v. Tamayo-Reyes*, 504 U.S. 1, 10 (1992).

In addition, a federal habeas court is precluded from considering claims that are not exhausted

but would clearly be barred if returned to state court. *Coleman v. Thompson*, 501 U.S. 722, 735 n.1

(1991) (stating that if a petitioner has failed to exhaust state remedies and the state court to which the

petitioner would be required to present his claims in order to meet the exhaustion requirement would now find the claims procedurally barred, there is a procedural default for federal habeas purposes regardless of the decision of the last state court to which the petitioner actually presented his claims).

Finally, a federal court must dismiss those claims or portions of claims that have been denied on adequate and independent procedural grounds under state law. *Coleman*, 501 U.S. at 750. If a petitioner attempts to raise a claim in a manner not permitted by state procedural rules, he is barred from pursuing the same claim in federal court. *Alderman v. Zant*, 22 F.3d 1541, 1549 (11th Cir. 1994).

Procedural default will be excused only in two narrow circumstances. First, a petitioner may obtain federal review of a procedurally defaulted claim if he can show both "cause" for the default and actual "prejudice" resulting from the default. "To establish cause for procedural default, a petitioner must demonstrate that some objective factor external to the defense impeded the effort to raise the claim properly in the state court." *Wright v. Hopper*, 169 F.3d 695, 703 (11th Cir. 1999). To establish prejudice, a petitioner must show that there is at least a reasonable probability that the result of the proceeding would have been different. *Henderson*, 353 F.3d at 892.

The second exception, known as the "fundamental miscarriage of justice," only occurs in an extraordinary case, where a "constitutional violation has probably resulted in the conviction of one who is actually innocent." *Murray v. Carrier*, 477 U.S. 478, 496 (1986). Actual innocence means factual innocence, not legal insufficiency. *Bousley v. United States*, 523 U.S. 614, 623 (1998). To meet this standard, a petitioner must "show that it is more likely than not that no reasonable juror would have convicted him" of the underlying offense. *Schlup v. Delo*, 513 U.S. 298, 327 (1995). In addition, "[t]o be credible, a claim of actual innocence must be based on [new] reliable evidence not presented at trial." *Calderon v. Thompson*, 523 U.S. 538, 559 (1998) (quoting *Schlup*, 513 U.S. at 324).

### III.    Analysis

The basic uncontested facts adduced at trial are as follows: On the night of November 1, 2005, police officer Michael Gavigan ("Officer Gavigan") approached Petitioner while he was walking on the street. Petitioner fled from Officer Gavigan who pursued him on foot. As Officer Gavigan rounded a corner of a condominium building, Petitioner began firing his weapon and Officer Gavigan was struck by one bullet. Most of the bullet's impact was absorbed by Officer Gavigan's bullet-proof vest. Petitioner was later located hiding under a beach walkway and was observed handling the firearm that had been used in the shooting.

### A.    *Claim One*

Petitioner alleges that Officer Gavigan did not have probable cause to approach him on the night of the incident as there was no evidence that a crime had been committed prior to the approach (Doc. 2 at 45). Specifically, Petitioner alleges that, contrary to Officer Gavigan's testimony at trial, the officer approached him with his gun already drawn and asked to speak with him even though Petitioner was doing nothing illegal at the time. *Id.* at 43, 45. Petitioner argues that he was justified in shooting at Officer Gavigan in order "to secure his safe retreat from imminent danger." *Id.* at 49. Petitioner raised this issue on direct appeal and the Fifth District Court of Appeal *per curiam* affirmed (App. G at 30, 137).

As an initial matter, Petitioner's claim on this issue is not clear. The exclusionary principle of *Wong Sun v. United States*, 371 U.S. 471 (1963), cited by Petitioner, limits the proof the Government may offer against the accused at trial and precludes evidence secured by official lawlessness. However, Petitioner does not explain what evidence should have been excluded at

trial. Rather, Petitioner argues that Officer Gavigan lacked reasonable suspicion for his initial approach towards Petitioner and as such, created a lethal and dangerous situation which put him (Petitioner) in danger (Doc. 2 at 46).[2] Even if Officer Gavigan acted improperly by initially approaching Petitioner, a finding not made by this Court, such impropriety is irrelevant in assessing the legality of Petitioner's arrest for his subsequent act of shooting at Officer Gavigan. The Eleventh Circuit has been clear that a defendant is not immunized from arrest for new crimes, even if "the chain of causation is started by the police misconduct." *United States v. Bailey*, 691 F.2d 1009, 1017 (11th Cir. 1982)(concluding that, even if a drug enforcement agent's initial arrest of the defendant was illegal, the defendant's subsequent flight and assault of the agent constituted probable cause to re-arrest the defendant).[3]

Petitioner was not arrested for his allegedly suspicious behavior of walking along the street. Petitioner was arrested for shooting Officer Gavigan. Petitioner does not allege, and the record does not suggest, that his arrest for shooting the officer was constitutionally defective. *See United States v. Smith*, 318 Fed. Appx. 780, 792 (11th Cir. 2009) (police officer had probable cause to arrest defendant after he tried to flee from the officer and then attacked him). Accordingly, Petitioner has not stated a cognizable Fourth Amendment claim, and the state court's affirmance of this claim on direct appeal was neither contrary to clearly established federal law nor based on an unreasonable determination of the facts in light of the evidence presented in the state court

---

[2] Any argument that Petitioner acted in self defense is addressed in claim two.

[3] This is an unpublished decision and is persuasive, but not binding, authority pursuant to Eleventh Circuit Rule 36–2. The Court notes this same rule applies to other Fed. Appx. cases cited herein.

proceeding. Claim one does not warrant habeas relief. 28 U.S.C. § 2254(d).

### B. Claim Two

Although labeled "self defense," claim two is a collection of arguments and disagreements with the outcome of Petitioner's trials. Specifically, Petitioner argues that: (1) the trial court erred by refusing to allow a witness' prior testimony to be used at trial; (2) Officer Gavigan committed perjury at trial; (3) he was justified in shooting Officer Gavigan under the standards of *John Bad Elk v. United States*, 177 U.S. 529 (1900); and (4) the state failed to present sufficient evidence to rebut his claim of self defense (Doc. 2 at 52-55). Petitioner raised these issues on direct appeal and the Fifth District Court of Appeal *per curiam* affirmed (App. G at 15-22, 137).

### 1. The trial court erred by refusing to admit prior testimony at trial

Petitioner alleges that on the night of the shooting, witness Parks Hempel ("Hempel") heard shots fired and heard shell casings hit the ground, but did not hear Officer Gavigan speak to Petitioner prior to the shooting (Doc. 2 at 52). During trial, Petitioner sought to present Hempel's testimony via an audio recording from a prior hearing (App. E at 191). Petitioner admitted that he had not served a subpoena on Hempel to appear at trial because, as a *pro se* defendant, it was difficult to do so. *Id.* at 189. The court refused to play the recorded testimony because Hempel should have been subpoenaed and brought to trial. *Id.* at 191. In his state appellate brief, Petitioner argued that the trial court's refusal to play the audio from the hearing was "a very serious error and judicial abuse, as the testimony was relevant to prove or disprove a material fact (Gavigan's testimony)." (App. G at 26). However, Petitioner presented this claim on direct appeal based on

10

state law grounds only and failed to allege the violation of a federal constitutional right.[4] Accordingly, this claim is procedurally unexhausted and this Court is precluded from addressing it on the merits.

Before a federal court may grant habeas relief, the habeas petitioner must exhaust every available state court remedy for challenging his conviction, either on direct appeal or in a state post-conviction motion. 28 U.S.C. § 2254(b); *Henderson*, 353 F.3d at 891 ("A state prisoner seeking federal habeas relief cannot raise a federal constitutional claim in federal court unless he first properly raised the issue in the state courts."). The prohibition against raising an unexhausted claim in federal court extends to both the legal theory of relief and to the specific factual contention that supports relief. *Kelley v. Sec'y for Dep't of Corr.*, 377 F.3d 1317, 1344 (11th Cir.2004). Petitioner's exclusively state law arguments presented on direct appeal leaves the exhaustion requirement unsatisfied. *Duncan*, 513 U.S. at 365.

Moreover, because he could have raised a federal constitutional claim on direct appeal, Petitioner is precluded from doing so collaterally in a Rule 3.850 motion. *See e.g., Childers v. State*, 782 So.2d 946, 947 (Fla. 4th DCA 2001) ( where an issue could have been raised on direct appeal, it is not the proper subject for a Rule 3.850 motion) . The state procedural rules also preclude a second direct appeal. Consequently, in addition to being unexhausted, this ground is procedurally defaulted. Petitioner has not alleged that some external factor impeded his efforts to properly raise

---

[4] Petitioner relied on Florida Statute § 90.804(2)(A) (allowing the introduction of former testimony as a hearsay exception provided that the declarant is unavailable as a witness) and two Florida Supreme Court cases in his argument. Petitioner did cite in his state court appellate brief, without explanation or pinpoint reference, *United States v. Young*, 470 U.S. 1 (1985). A review of this case does not indicate how *Young* is pertinent to the issue at hand.

this claim on direct appeal. *Wright*, 169 F.3d at 703. Nor has Petitioner presented new, reliable evidence not presented at trial that would support an actual innocence claim. *Shlep v. Delo*, 513 U.S. 289, 324 (1995).

Because this ground remains unexhausted, it precludes federal review and this claim is denied pursuant to 28 U.S.C. § 2254.

### 2. *Officer Gavigan's testimony at trial*

Petitioner alleges that Officer Gavigan's testimony at trial must have been perjured because the version of events presented at trial could not have happened as he testified (Doc. 2 at 53). Petitioner also alleges that Officer Gavigan's wounds were superficial and that he was essentially unharmed. *Id.* at 58. Petitioner presented this issue in his state appellate brief on state law grounds only and failed to specifically allege the violation of a federal constitutional right.

Assuming, *arguendo*, that Petitioner's assertions regarding Officer Gavigan's alleged perjury is a claim that the evidence presented at trial was insufficient to find him guilty of aggravated battery (a due process violation under the Fourteenth Amendment), Petitioner is not entitled to relief. On federal habeas review, the question for this Court concerning the sufficiency of evidence in a state court proceeding is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319 (1979) (emphasis in original). Considerable evidence, much of it uncontested, was presented as to Petitioner's guilt.

Officer Gavigan testified on direct examination to the following. On the night of November 1, 2005, while on routine patrol in his car, he observed Petitioner walking down the street carrying a bag (App. E at 12). Although it was night and it was raining, Petitioner was wearing sunglasses.

*Id.* Officer Gavigan saw Petitioner again about twenty to thirty minutes later only a short distance from where he had initially seen him. *Id.* at 44. Officer Gavigan pulled his car aside and observed Petitioner, who had been walking north, turn and begin walking south. *Id.* at 45. He decided to speak with Petitioner and left his car to approach him. When he was approximately twenty feet from Petitioner, he identified himself as a police officer and asked to speak with him. *Id.* at 46. Petitioner did not answer and proceeded to cross the street, leaving Officer Gavigan on the sidewalk where he had initially attempted to make contact. *Id.* Petitioner proceeded part-way across the street and turned to face Officer Gavigan who thought that Petitioner had decided to speak with him. *Id.* at 46-47. He then observed Petitioner making furtive movements and dig in his jacket pocket and he could see an object in Petitioner's pocket. *Id.* at 47. Officer Gavigan re-identified himself as a police officer and ordered Petitioner to remove his hand from his jacket. Petitioner turned and ran from Officer Gavigan who pursued him on foot. When the officer rounded a corner he observed Petitioner with a gun in his hand who began firing at him. *Id.* at 50. As Officer Gavigan sought cover behind a concrete wall, he could hear the bullets coming in his vicinity and felt himself get hit in the side. *Id.* at 51. Officer Gavigan was wearing a bullet resistant vest which absorbed most of the shock from the bullet's impact. *Id.* at 65. However, Officer Gavin suffered a soft tissue injury and a herniated disk as a result of the shooting. *Id.*

Petitioner cross examined Officer Gavigan and attempted to cast doubt on his version of events by showing a surveillance video from a nearby business that had a timer on it (App. E at 68-121). The sound of shots being fired, but no voices, could be heard on the video. Petitioner also examined Officer Gavigan about his testimony that Petitioner had been stationary when he fired the shots at the officer and pointed out that the shell casings were not found where they would be

13

expected if the shots had been fired from a stationary position. *Id.* at 100-01. Petitioner questioned

Officer Gavigan extensively about his medical records, presumably to cast doubt on the extent of

his injuries. Petitioner also cross examined the state's other witnesses and established that the shell

casings recovered at the scene were in good condition. *Id.* at 130.

Petitioner testified that he was unaware that Officer Gavigan was a police officer when he

initially approached him; that the officer was wearing a rain slicker that obscured his uniform; and

that the officer had drawn his gun prior to Petitioner's attempt to flee (App. E at 311). Petitioner

ran from Officer Gavigan because he did not know what was going on and he wanted to get away.

*Id.* at 312. Petitioner thought that the officer was going to shoot him in the back, so in an effort to

force him to retreat, Petitioner shot to the side of Officer Gavigan, while continuing to run. *Id.* at

314-315. Petitioner also testified that he was afraid of certain criminals from out of state, including

his former in-laws and that these criminals killed a relative of his. *Id.* at 317-321. During closing

argument, Petitioner explained in great detail the points on which Officer Gavigan's and

Petitioner's versions of events differed and argued Officer Gavigan had not identified himself as

a policeman. *Id.* at 396 -412. Petitioner argued that Gavigan had created a dangerous situation and

that he (Petitioner) was not at fault in the shooting. *Id.* at 396. He argued that Officer Gavigan had

approached him in a menacing manner which justified his actions. *Id.* at 402-403.

A jury has the right to believe or disbelieve any witness. *See United States v. Hewitt*, 663 F.2d

1381, 86 (11th Cir. 1981) (unless testimony was incredible as a matter of law, a jury's credibility

determination must be accepted by reviewing court). The jury was entitled to find the state's case

convincing and Officer Gavigan's testimony credible. The jury was also entitled to disbelieve

Petitioner's testimony and to consider his statements as untruthful or even as substantive evidence of

his guilt. *United States v. Brown*, 53 F.3d 312, 14 (11th Cir. 1995) ("a statement by a defendant, if disbelieved by the jury, may be considered as *substantive evidence* of the defendant's guilt") (emphasis in original); *Atkins v. Singletary*, 965 F.2d 952, 961 n.7 (11th Cir. 1992) (when a defendant chooses to testify, he runs the risk that if disbelieved "the jury might conclude the opposite of his testimony is true."). Although Petitioner disagrees with the jury's decision, this Court cannot conclude that no rational trier of fact, after considering the testimony and evidence presented at trial, could have found the essential elements of aggravated battery beyond a reasonable doubt. *Jackson*, 443 U.S. at 319. Accordingly, to the extent that Petitioner's claim is one of insufficiency of the evidence, it does not warrant habeas relief. Moreover, any other claim regarding Officer Gavigan's testimony was presented to the state appellate court in terms of state law only. As such, federal review is precluded. *See discussion*, *supra* claim two; 28 U.S.C. § 2254(b).

### 3. Justification

Petitioner asserts that the Supreme Court precedent set in *John Bad Elk v. United States*, 177 U.S. 529 (1900)[5] provided a constitutional right to use reasonable force to resist an unlawful arrest (Doc. 2 at 54). Petitioner raised this issue in his state appellate brief (App. G at 28) and Florida's Fifth District Court of Appeal *per curiam* affirmed.

Petitioner's reliance on *John Bad Elk* is misplaced. Even if Officer Gavigan's request to speak with Petitioner could properly be construed as an arrest, a finding not made by this Court, the common law doctrine that a person can lawfully use all force necessary to resist an unlawful arrest has been superceded by Florida Statute § 776.051(1) ("A person is not justified in the use of

---

[5]In *John Bad Elk*, the United States Supreme Court applied the common law doctrine that a person could lawfully use all force necessary to resist an unlawful arrest to overturn a petitioner's conviction for murder.

force to resist an arrest by a law enforcement officer, or to resist a law enforcement officer who is engaged in the execution of a legal duty, if the law enforcement officer was acting in good faith and he or she is known, or reasonably appears, to be a law enforcement officer."); *See also United States v. Danehy*, 680 F.2d 1311, 1316 (11th Cir.1982) ("[T]he common law right to resist an arrest that is not based upon probable cause, suited though it may have been to a past era, has no significant role to play in our own society where ready access to the courts is available to redress such police misconduct." (citations omitted)). Accordingly, Florida law forecloses the defense of justifiable use of force by a defendant who resists an arrest by a law enforcement officer, regardless of the legality of the arrest and Petitioner's reliance on *John Bad Elk* is unavailing. The Fifth District Court of Appeal's rejection of this claim was neither contrary to clearly established federal law nor based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. This claim does not warrant habeas relief. 28 U.S.C. § 2254(d).

### 4. *Self Defense*

Petitioner argues that the state failed to prove beyond a reasonable doubt that Petitioner did not act in self-defense when he shot at Officer Gavigan (Doc. 2 at 59). Petitioner raised this issue in his state appellate brief, but only as a state-law issue. Accordingly, to the extent that Petitioner argues that the Fifth District Court of Appeal misapplied Florida law in its *per curiam* affirmance of his conviction, this court cannot review it. A state's interpretation of its own laws or rules provides no basis for federal habeas corpus relief, since no question of a constitutional nature is involved. *See Lewis v. Jeffers*, 497 U.S. 764, 780 (1990) ("[F]ederal habeas corpus relief does not lie for errors of state law ...."); *Pulley v. Harris*, 465 U.S. 37, 41 (1984) ("A federal court may not issue the writ on the basis of a perceived error of state law."); *Hendrix v. Secretary, Fla. Dep't of Corr.,* 527 F.3d 1149,

1153 (11th Cir.2008) ( a violation of state law is not a ground for federal habeas relief).

Even if construed as a sufficiency of the evidence claim, Petitioner would need to demonstrate that no rational trier of fact could have determined that Petitioner did not act in self-defense. *Jackson*, 443 U.S. at 319. Petitioner simply cannot meet this burden. After the case in chief, Petitioner asked for, and was permitted to have, a self defense instruction read to the jury:

> The use of deadly force is justifiable only if the defendant reasonably believes that the force is necessary to prevent imminent death or great bodily harm to himself while resisting another's attempt to murder him.
>
> A person is justified in using deadly force if you reasonably believe that such force is necessary to prevent imminent death or great bodily harm to himself or another.
>
> However, the use of deadly force is not justifiable if you find that Thomas Joseph Cutaia initially provoked the use of force against himself unless the force asserted toward the defendant was so great that he reasonably believed that he was in imminent danger of death or great bodily harm, and had exhausted every reasonable means to escape the danger other than using deadly force on Michael Gavigan.
>
> A person is not justified in using force to resist an arrest by a law enforcement officer who is known to be or reasonably appears to be a law enforcement officer. However, if an officer uses excessive force to make an arrest, then a person is justified in the use of reasonable force to defend himself, but only to the extent he reasonably believes such force is necessary.
>
> In deciding whether defendant was justified in the use of deadly force, you must judge him by the circumstances by which he was surrounded at the time the force was used. The danger facing the defendant need not have been actual; however, to justify the use of deadly force the appearance of danger must have been so real that a reasonably cautious and prudent person under the same circumstances would have believed that the danger could be avoided only through the use of deadly force, or through the use of that force. Based upon appearances, the defendant must have actually believed that the danger was real.
>
> If the defendant was not engaged in an unlawful activity and was attacked at any place where he had a right to be, he had no duty to retreat and had the right to stand his ground and meet force with force, including deadly force, if he

reasonably believed that it was necessary to do so to prevent death or great bodily harm to himself.

In considering the issue of self-defense, you may take into account the relative physical abilities and capacities of the defendant and Michael Gavigan.

If in your consideration of the issue of self-defense you have a reasonable doubt on the question of whether the defendant was justified using in the use of deadly force, you should find the defendant not guilty. However, if from the evidence you are convinced that the defendant was not justified in the use of deadly force, you should find him guilty if all of the elements of the charge have been proved.

(App. G at 449-452). Clearly, the jury was well instructed on self-defense and on the state's burden to negate a self-defense claim. The jury heard testimony from both Petitioner and Officer Gavigan. Although Petitioner testified that he acted in self-defense, a rational trier of fact could have discredited Petitioner's testimony and chosen to believe Officer Gavigan. A jury has the right to believe or disbelieve any witness, even if Petitioner disagrees with the jury's decision. *See Hewitt*, 663 F.2d at 1386. The appellate court's rejection of this claim was neither contrary to clearly established federal law nor based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. Accordingly, this claim does not merit habeas relief. 28 U.S.C. § 2254(d).

## C. Claim Three

Petitioner alleges that his convictions for both carrying a concealed weapon and for possession of a firearm by a convicted felon violate double jeopardy principals under the Fifth Amendment (Doc. 2 at 68). Specifically, Petitioner argues that the two convictions "are greater and lessor included offenses of each other" and that the Fifth Amendment forbids successive

prosecution and cumulative punishment for the greater and lessor offenses.[6] *Id.* at 70. Petitioner

raised this issue on direct appeal and the Fifth District Court of Appeal *per curiam* affirmed (App.

G at 41, 137).

The Double Jeopardy Clause of the Constitution protects a defendant from multiple

punishments for the same offense. *Missouri v. Hunter*, 459 U.S. 359, 365-66 (1983). Although the

Double Jeopardy Clause does not flatly prohibit the legislature from punishing the same conduct

under two different statutes, federal courts assume that the legislature ordinarily does not intend to

do so " 'in the absence of a clear indication of contrary legislative intent.' " *Hunter*, 459 U.S. at 366

(quoting *Whalen v. United States*, 445 U.S. 684, 691-92(1980)). The Eleventh Circuit summarized

its interpretation of Supreme Court law regarding double jeopardy as follows:

> To summarize, our review of a potential double jeopardy violation arising from a single prosecution is a two-stage analysis. First, we ascertain whether there exists a clear legislative intent to impose cumulative punishments, under separate statutory provisions, for the same conduct. If a clear indication of such intent exists, our inquiry is at an end and the double jeopardy bar does not apply. If there is no clear indication of legislative intent to impose cumulative punishments, we examine the relevant statutes under the same-elements test of *Blockburger*. Under that test, if each statutory offense requires proof of an element not contained in the other, the offenses are not the "same" and double jeopardy is no bar to cumulative punishment.

*Williams v. Singletary*, 78 F.3d 1510, 1513 (11th Cir.1996).

The analysis of legislative intent begins by examining the language of the criminal statutes

---

[6]Prior to trial, Petitioner moved the court to sever the count of possession of a firearm by a convicted felon from the counts of attempted second degree murder and of carrying a concealed weapon (App. A at 211). In the motion, Petitioner argued that in order to prove the count of possession of a firearm by a convicted felon, the state would require evidence of a prior conviction which would deprive him of a fair trial. *Id.* at 211. The motion was granted and, after his trial for aggravated battery and carrying a concealed weapon, Petitioner was separately tried and found guilty on the charge of possession of a firearm by a convicted felon ( App. A at 221; App. F at 975-1256).

themselves. At the time of Petitioner's offense, the Florida statute concerning carrying a concealed weapon provided that "[a] person who carries a concealed firearm on or about his or her person commits a felony of the third degree, punishable as provided in s. 775.082, s. 775.083, or s. 775.084." Fla. Stat. § 790.01 (2006). The statute concerning possession of a firearm by a convicted felon provided that "[i]t is unlawful for any person to have in his or her care, custody, possession, or control any firearm, ammunition, or electric weapon or device, or to carry a concealed weapon. . . if that person has been found guilty of an offense that is a felony in another state, territory, or country and which was punishable by imprisonment for a term exceeding 1 year." Fla. Stat. § 790.23(1)(e) (2006). The language of these statutes provides no answer to the question of whether the Florida legislature intended to punish carrying a concealed firearm and possession of a firearm by a felon as separate offenses. Therefore, the Court will look at the same-elements test set forth in *Blockburger v. United States*, 284 U.S. 299 (1932).

In *Blockburger*, the Supreme Court held that "the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of a fact which the other does not." 284 U.S. at 304. Here, each offense requires proof of an element that the other does not. An element of possession of a firearm by a convicted felon, but not carrying a concealed firearm, is that Petitioner has been convicted of a felony. An element of carrying a concealed firearm, but not possession of a firearm by a convicted felon, is that the firearm carried by Petitioner was concealed. Accordingly, the charges do not become the same offense under the *Blockburger* test, and the Double Jeopardy Clause was not violated. *See State v. Maxwell*, 682 So.2d 83, 84 (Fla.1996) (multiple convictions for carrying a concealed firearm, possession of a short-barreled shotgun, and possession of a firearm by a convicted felon do not violate the constitutional

protection against double jeopardy). The appellate court's rejection of this claim was neither contrary to clearly established federal law nor based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. Accordingly, claim three does not merit habeas relief. 28 U.S.C. § 2254(d).

### D. Claim Four

Petitioner argues that the use of the lesser included offense jury instructions violated double jeopardy principals because "the sufficiency and adequacy of the evidence does not support [an attempted murder charge]." (Doc. 2 at 74). Specifically, Petitioner argues that, because he was acquitted of attempted second degree murder, his conviction on the lessor included charge of aggravated battery constituted a form of double jeopardy because "failure to convict on the 'greater' bars prosecution on the lessor-included-offense." *Id.* at 75. Petitioner raised this issue in his state-court appellate brief and the Fifth District Court of Appeal *per curiam* affirmed (App. G at 44).

Petitioner's claim lacks support in law. Where a defendant has been charged with a crime that is a lesser-included offense of another charged crime, the Double Jeopardy Clause protects that defendant from being convicted of both crimes. *See Rutledge v. United States*, 517 U.S. 292, 306 (1996). In addition, the Double Jeopardy Clause protects against a second prosecution for the same offense after an acquittal or conviction, as well as against multiple punishments for the same offense. *North Carolina v. Pearce*, 395 U.S. 711,717 (1969), *overruled on other grounds by Alabama v. Smith*, 490 U.S. 794, 800-801 (1989). Petitioner appears to rely upon Supreme Court precedent which bars a second trial on a lesser included after an acquittal on a greater crime. *Monge v. California*, 524 U.S. 721, 729 (1998). However, in the instant case, Petitioner was not convicted of both attempted second degree murder and aggravated battery. Neither was Petitioner tried

separately for aggravated battery after being acquitted of attempted second degree murder. Rather, the jury simply returned a verdict for aggravated battery which is a lesser included offense of attempted second degree murder (App. A at 377-379). Petitioner does not demonstrate that the state court's decision rejecting this claim was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States. Accordingly, claim four does not warrant habeas relief. 28 U.S.C. § 2254(d)(1).

### E. Claim Five

Petitioner alleges that he was denied the right to due process because the trial court refused to subpoena his defense witnesses (Doc. 2 at 82). Specifically, Petitioner alleges that he would have called Parks Temple, Erica Henderson, Timothy Mell, and Dan Redcliffe at trial; that these witnesses were crucial to his defense; and that he subpoenaed all of the witnesses by filing the subpoenas with the clerk. *Id.* Petitioner insists that Florida Rule of Criminal Procedure 3.361 demanded that the clerk of court issue subpoenas and that the "State outright refused to process [Petitioner's] witness subpoenas on numerous occasions, several hearings, and both trials." *Id.* at 83. Petitioner raised this issue in his state court appellate brief and the Fifth District Court of Appeal *per curiam* affirmed (App. G at 49-51, 137).

The issue of Petitioner's failure to serve subpoenas on his witnesses was raised several times before trial and at trial and it was explained to Petitioner that he needed to have his witness subpoenas served by the sheriff (App. C at 631, App. E at 189). Petitioner argued to the trial court that because he was *pro se*, filing with the court was as far as he could go and that by doing so, he did indeed subpoena his witnesses (App. E at 190).

While Florida Rule of Criminal Procedure 3.361(a) allows the clerk of the court or any

attorney of record in an action to *issue* a subpoena, it does not grant authority for the clerk to serve the subpoena on a witness. Rather, the service of process of witness subpoenas is governed by Florida Statute § 48.021(1) which states that "all process shall be served by the sheriff of the county where the person to be served is found. . ." (2007). Accordingly, Petitioner's reliance on Florida Rule of Criminal Procedure 3.361 is misplaced.

Petitioner has pointed to no clearly established federal law, as determined by the Supreme Court of the United States, indicating that a *pro se* defendant should be excused from compliance with a state's procedural rules regarding service of process. On the contrary, the Supreme Court has clearly stated that:

> **The right of self-representation is not a license to abuse the dignity of the courtroom. Neither is it a license not to comply with relevant rules of procedural and substantive law.** Thus, whatever else may or may not be open to him on appeal, a defendant who elects to represent himself cannot thereafter complain that the quality of his own defense amounted to a denial of 'effective assistance of counsel.'

*Faretta v. California*, 422 U.S. 806, 834 (1975) (emphasis added). The trial court explained to Petitioner that sending his subpoenas to the clerk of the court was insufficient; he needed to serve his subpoenas on the witnesses. Petitioner's refusal to do so does not warrant habeas relief. Accordingly, the appellate court's rejection of this claim was neither contrary to clearly established federal law nor based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. This claim is denied pursuant to 28 U.S.C. § 2254(d).

### F. Claim Six

Petitioner alleges that the trial court unconstitutionally limited his cross examination of Officer Gavigan in regards to an alleged consensual encounter between the officer and Petitioner (Doc. 2 at

85).  Petitioner appears to specifically take issue with the trial court's refusal to allow Petitioner to question the officer regarding whether any Florida statute governed a consensual stop and whether probable cause existed for the initial encounter between Petitioner and Officer Gavigan (App. E at 73, App. F at 1163-64).  The state appellate court rejected this claim on direct appeal (App. G at 137). After reviewing the trial transcripts, the record does not demonstrate that the trial court impermissibly limited Petitioner's cross examination of Officer Gavigan.

The confrontation clause of the Sixth Amendment guarantees that every criminal defendant has the right to confront witnesses against him. *Davis v. Alaska*, 415 U.S. 308, 315 (1974).  The opportunity to conduct reasonable cross-examination is of primary interest in this Sixth Amendment right. *See Crawford v. Washington*, 541 U.S. 36, 41-42 (2004); *U.S. v. Calle*, 822 F.2d 1016, 1020 (11th Cir. 1987).  However, a defendant's right to cross-examine witnesses is not without limitation. The United States Supreme Court has observed that "the Confrontation Clause guarantees an *opportunity* for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish." *Delaware v. Fensterer*, 474 U.S. 15, 20 (1985) (emphasis in original).  Cross-examination is constitutionally adequate as long as a defendant is permitted to elicit sufficient information from which: (1) the jury can gauge credibility, motive, and bias; and (2) his counsel is able to argue to the jury how the witness might have been biased. *United States v. Van Dorn*, 925 F.2d 1331, 1335 (11th Cir.1991); *United States v. Sellers*, 906 F.2d 597, 602 (11th Cir.1990); *Bundy v. Dugger*, 850 F.2d 1402 (11th Cir.1988). The standard in reviewing a limitation upon cross-examination is whether "the excluded testimony would have given the jury a different impression of the witness' credibility." *United States v. DeParias*, 805 F.2d 1447, 1452 (11th Cir.1986).

In his first trial, Petitioner cross-examined Officer Gavigan regarding his reasons for wishing to speak with him.  On direct examination, the officer had noted that Petitioner had first come to his attention because he was wearing sunglasses at night in the rain (App. E at 42).  On cross-examination, the following exchange occurred:

[PETITIONER]: . . . Suspicious – if I was wearing a funny hat, would that have been suspicious?

[GAVIGAN]: What do you mean by funny?

Q: Anything out of what you might deem the realm of normal for yourself? Anything?  Anything, a banana hat, would you have stopped me to question me?

A: I don't think that's suspicious, no.

Q: Okay.  Is there any statute for a consensual stop?

[STATE]: Objection, regarding – he's asking him legal questions.

[COURT]: I'll sustain the objection, sir.

[PETITIONER]: How about probable cause?

[STATE]: Objection, asking for a legal conclusion.

[COURT]: Let me ask you what your question is again, please?  Just tell me what your question is.

[PETITIONER]: What was your initial – your intention when you approached me?

[COURT]: Any objection to that question?

| [STATE]: | Not to that question. |
|---|---|
| [COURT]: | You may answer that question. |
| [GAVIGAN]: | My intention was to make consensual encounter with you. |

(App. E at 73-74).  A similar exchange occurred during Petitioner's second trial for possession of a firearm by a convicted felon.  Petitioner repeatedly questioned Officer Gavigan as to whether probable cause existed for his initial approach towards Petitioner (App. F at 1163-67).  The state objected and argued that the reason for the initial encounter was not relevant to the case. *Id.* at 1164.  The trial court determined that probable cause was not an issue in this particular case and sustained the objection. *Id.* at 1164, 1166.  Petitioner argues that, because probable cause "governs an officer's actions, [i]t was in no way unduly harassing interrogation and should have been allowed." (Doc. 2 at 86).

Contrary to Petitioner's assertions, the Confrontation Clause of the Sixth Amendment does not prevent a trial judge from imposing any limits on the defense's cross examination.  Rather a trial judge may impose reasonable limits to avoid "harassment, prejudice, confusion of the issues, the witness' safety, or interrogation that is repetitive or only marginally relevant." *Delaware v. Van Arsdall*, 475 U.S. 673, 679 (1986).   Petitioner's  questions to Officer Gavigan regarding the Florida statutes governing consensual stops and probable cause were not disallowed as unduly harassing as he alleges. Rather, the questions were disallowed as irrelevant and as calling for a legal conclusion on Officer Gavigan's part.  Accordingly, the subjects of Petitioner's desired inquiry were not  appropriate on cross-examination as they were irrelevant to Petitioner's guilt or innocence concerning his charged conduct. *See De Lisi v. Crosby*, 402 F.3d 1294, 1300 (11th Cir. 2005) (in order to establish Confrontation Clause violation a defendant must be prohibited from engaging in "otherwise appropriate" cross examination);  *Alford v. United States*, 282 U.S. 687, 694 (1931)( The scope of

cross-examination regarding a particular line of inquiry is "within the sound discretion of the trial court," and "it may exercise a reasonable judgment in determining when [a] subject is [inappropriate]."). The denial of this claim by the Fifth District Court of Appeal was neither contrary to, nor involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States. Accordingly, claim six does not warrant habeas relief. 28 U.S.C. § 2254(d)(1).

### G. Claim Seven

Petitioner alleges that his Fifth Amendment rights were violated because he was not formally indicted by a grand jury for the offenses charged in the information (Doc. 2 at 87). Petitioner raised this issue on direct appeal and the Fifth District Court of Appeal *per curiam* affirmed (App. G at 33, 137).

This allegation fails to state grounds for habeas relief because there is no federal constitutional right to be tried upon a grand jury indictment for a state offense. The Fifth Amendment's guarantee of indictment by grand jury has not been applied to the states through the Fourteenth Amendment and therefore, the sufficiency of the indictment is primarily a matter of state law. *Alexander v. Louisiana*, 405 U.S. 625, 633 (1972). To the extent Petitioner alleges that the state court incorrectly applied Florida law by failing to indict by grand jury, this Court may not review it. A state's interpretation of its own laws or rules provides no basis for federal habeas corpus relief, since no question of a constitutional nature is involved. *See Lewis*, 497 U.S. 764, 780 (1990) ("[F]ederal habeas corpus relief does not lie for errors of state law ...."). Accordingly, the state court's denial of relief on this claim was neither contrary to, nor an objectively unreasonable application of, clearly established federal law, nor was it an unreasonable determination of the facts in light of the evidence presented in the state court

27

proceedings. Claim seven in therefore denied.

### H. Claim Eight

Petitioner alleges that a due process violation and "violation of the law of Fundamental Fairness of the 6th and 14th Amendments [of the] U.S. Constitution" was violated by the use of a six person jury at his trial (Doc. 1 at 27). After reviewing Petitioner's state court appellate brief, this issue appears to be unexhausted and cannot be considered by this Court. 28 U.S.C. § 2254(b); *O'Sullivan v. Boerckel*, 526 U.S. 838 (1999) ("state prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process.").

Assuming *arguendo*, that the claim is exhausted because Petitioner's state court appellate brief tangentially addressed this issue, the claim fails on the merits because there is no federal constitutional right to be tried by a twelve person jury. Article 1, § 22, of the Florida Constitution allows the legislature to establish the number of jurors for cases, both civil and criminal, so long as a jury contains at least six jurors. The United States Supreme Court has expressly held that Florida's use of a six member jury does not violate the Sixth Amendment. *Williams v. Florida*, 399 U.S. 78, 86 (1970). The Supreme Court's holding in *Williams* disposes of petitioner's claim that the Sixth and Fourteenth Amendments require that he be tried by a jury of twelve. The Constitution simply does not require it. *See, e.g., Cabberiza v. Moore*, 217 F.3d 1329, 1333 (11th Cir.2000) (relying on *Williams v. Florida* to deny habeas relief on Florida prisoner's claim that the Sixth Amendment required that he be tried of first degree murder by a jury of twelve, rather than six). Accordingly, Petitioner is not entitled to habeas relief on claim eight.

### I. Claim Nine

Petitioner argues that his Fifth, Sixth, Eighth, and Fourteenth Amendment rights were violated by the use of Florida's 10-20-Life[7] statute because it was used in conjunction with a lessor-included offense jury instruction (Doc. 2 at 94). In particular, Petitioner appears to take issue with the punishment imposed for his conviction for aggravated battery when he was acquitted of attempted second degree murder. *Id.* This issue is unexhausted. In his state court appellate brief, Petitioner argued that the use of the 10-20-Life statute demonstrated prosecutorial vindictiveness, but did not argue that the 10-20-Life statute could not legally be used in conjunction with a lessor included jury offense instruction (App. G at 57).

In response to Respondent's argument that this claim is unexhausted, Petitioner notes in his reply brief that in Florida a sentencing issue may be raised at any time; that sentencing issues do not have to be briefed on direct appeal; and that there is no time limit to raise a sentencing issue (Doc. 40 at 16). Petitioner misses the point. Since Petitioner has not yet raised this issue in state court, this claim is currently unexhausted and cannot be considered by this Court. 28 U.S.C. § 2254(b); *O'Sullivan*, 526 U.S. at 838 ("state prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process.").

Furthermore, notwithstanding Petitioner's cryptic citation to *Apprendi v. New Jersey*, 120 S.Ct.

---

[7] Florida Statute § 775.087 ("10-20-Life") provides minimum mandatory sentences when a firearm is used in the commission of a violent felony. Under the statute, a person who commits an aggravated battery and "during the course of the commission of [the aggravated battery] such person discharged a [firearm] shall be sentenced to a minimum term of imprisonment of 20 years." Fla. Stat § 775.087 (2)(a)(2) (2006).

2348 (2000),[8] this ground does not appear to present a claim of federal constitutional dimension. Whether an information charging attempted second degree murder allows a jury instruction on the lesser included offense of aggravated battery is a matter solely within the province of the Florida courts. When a sentence falls within the statutory range, it is not a cognizable constitutional issue in habeas proceedings. *Townsend v. Burke*, 334 U.S. 736, 741 (1948), *see also Branan v. Booth*, 861 F.2d 1507 (11th Cir.1988) (holding that petitioner's argument that trial judge misinterpreted state law regarding departure from recommended guidelines for sentencing was denial of his due process raised only a state law issue and was not cognizable in federal habeas action). A state court's error in applying its own sentencing provisions is not cognizable on federal habeas corpus review, even when it is "couched in terms of equal protection and due process." *Id*. at 1508. Therefore, a state decision affecting only the sentencing rights of prisoners under state law is of no consequence in relation to a federal habeas corpus application.

Finally, to the extent it was raised in the instant petition, Petitioner's claim of prosecutorial vindictiveness lacks merit. In his state appellate brief, Petitioner alleges that the state attorney upgraded the charge to 10-20-Life "in direct response to the accused filing motions and refusing a plea." (App. G at 57). It is not disputed that Petitioner was properly chargeable under the 10-20-Life statute, since he used a firearm to commit an aggravated battery. *See* Fla. Stat § 775.087 (2)(a)(2) (2006). The United States Supreme Court has specifically held that "so long as the prosecutor has probable cause to believe that the accused committed an offense defined by statute, the decision

---

[8]The *Apprendi* court held that every fact that increases the prescribed range of penalties to which a criminal defendant is exposed must be established by proof beyond a reasonable doubt. In the instant case, Petitioner neither explains his citation to *Apprendi* nor points to specific facts that he believes were not established.

whether or not to prosecute, and what charge to file or bring before a grand jury, generally rests entirely in his discretion." *Bordenkircher v. Hayes*, 434 U.S. 357, 64 (1978); *see also Oyler v. Boles*, 368 U.S. 448, 456 (1962) ( "[T]he conscious exercise of some selectivity in enforcement is not in itself a federal constitutional violation" so long as "the selection was [not] deliberately based upon an unjustifiable standard such as race, religion, or other arbitrary classification."). Accordingly, the denial of this claim by the state appellate court was neither contrary to, nor involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States

### J. Claim Ten

Petitioner alleges that his Fifth, Sixth, and Fourteenth Amendment rights were violated by state law discovery violations. Specifically, Petitioner alleges:

> The states attorney was supposed to deliver everything they had. Mr. Cutaia got about 500-600 pages of discovery[. W]hen Mr. Cutaia filed for the entire state attorneys file, the file is 1326 pages and 6 cd's. Mr. Cutaia only got 3 cd's prior to trial and 500-600 pages.

(Doc. 1 at 29). Petitioner alleges that "[t]here is an all probability a *Brady* violation within the 1326 pages and 6 cd's." (Doc. 1 at 29). Petitioner raised the issue of a discovery violation in his state court appellate brief and the Fifth District Court of Appeal *per curiam* affirmed (App. G at 48, 137).

Petitioner's allegations of discovery violations were thoroughly addressed by the trial court in a May 14, 2007 pre-trial hearing on several motions, including Petitioner's motion to compel discovery. At the hearing, the state attorney told the state court that there were no investigative reports to disclose to Petitioner and explained the initial delays in provision of discovery:

> Your Honor, the State has provided Mr. Cutaia with all the documentation. As soon as we come in possession of new documents or new evidence, we send it over to him immediately. Originally it took a long time, the 18 months, because he was in the state

hospital for over a year, then he fired his attorneys, there was a delay in getting it to him because we really didn't know – he hadn't filed a demand for discovery, once he did that, then we started sending the information over to him.. So we've done everything in a timely manner.

(App. C at 734).  Although Petitioner argued with the trial court regarding the relevancy of the material he requested from the state, the state assured the court that Petitioner was receiving all discovery and that it would continue to provide Petitioner with anything it received in the future. *Id.* at 736.

Petitioner appears to argue that, because the entire state attorney file requested after trial had a greater number of pages than was provided in discovery, a *Brady* violation must have occurred. However, Petitioner does not point to a single piece of exculpatory evidence that was withheld by the state and does not point to a single discovery violation other than the apparent discrepancy between the size of state attorney's entire file and the size of his own discovery file.  Habeas relief is not warranted when claims are merely conclusory allegations unsupported by specifics. *Caderno v. United States*, 256 F.3d 1213, 1217 (11th Cir. 2001); *Black ledge v. Allison*, 431 U.S. 63 (1977) (vague and conclusory claims failing to state facts which would show an entitlement to relief can be dismissed without further effort on the part of the court).  The appellate court's rejection of this claim was neither contrary to or an unreasonable application of federal law nor an unreasonable application of the law to the facts. Ground ten does not warrant habeas corpus relief.  28 U.S.C. § 2254(d).

### K.  Claim Eleven

Petitioner alleges that "circumstances exist that render the state process ineffective to protect the rights of the accused, appellant, Petitioner, Mr. Cutaia." (Doc. 1 at 30).  Specifically, Petitioner asserts that the circumstances are "a (4) four year, plus, conspiratol  campaign of slander, defamation, false light invasion of privacy and conspiracy to injure in person and or reputation, by public employees

of the state of Florida and (3) three of her [agencies] or subdivisions. Also involved are the F.B.I. and their supported personnel (Salemmes and Martines (Martines are with Gates D.O.D))." (Doc. 1 at 30). Petitioner notes that he has filed three state-court lawsuits that demonstrate a conspiracy that has been an interference with the fair administration of justice (Doc. 1 at 33). Upon review of Petitioner's state court appellate brief, this issue appears to be unexhausted and cannot be considered by this court. 28 U.S.C. § 2254(b); *O'Sullivan*, 526 U.S. at 838.

Furthermore, the claim does not appear to be one that is cognizable in a 28 U.S.C. § 2254 petition. It is well-established that a writ of habeas corpus only extends to custody and detention. *See Spradley v. Dugger*, 825 F.2d 1566, 1568 (11th Cir.1987); *Williams-Bey v. Trickey*, 894 F.2d 314, 317 (8th Cir.1990) ("Section 2254 only authorizes federal courts to review the constitutionality of a state criminal conviction, not infirmities in a state post-conviction relief proceeding"). The gravamen of this particular claim is unclear. However, to the extent Petitioner argues that the state court's denial of his tort claims was unreasonable, such a claim is not cognizable in habeas corpus because it does not challenge the fact or duration of Petitioner's confinement. Federal habeas relief does not extend to collateral or ancillary forms of administrative relief. *Williams-Bey*, 894 F.2d at 317. Likewise, any challenge to the legality of his post-conviction proceedings as a result of an alleged conspiracy is not cognizable because such proceedings are not related to a Petitioner's detention. Accordingly, claim eleven does not state a claim for habeas relief and is denied pursuant to 28 U.S.C. § 2254(a).[9]

---

[9] In his reply brief, Petitioner expressed intent to file a civil action as to the conduct described in claim eleven. One June 10, 2011, Petitioner filed a 106 page complaint against eighty-eight named defendants pursuant to 42 U.S.C. § 1983 (Case No. 6:11-cv-00973-JA-DAB). The issues raised in claim eleven appear to be repeated in the § 1983 claim. Accordingly, this Court also treats claim eleven as abandoned. *See Thomas v. McDonough*, 228 F. App'x 931, 932 (11th Cir.2007) (holding that " § 1983 and § 2254 are mutually exclusive," and that if a claim can be brought under § 1983, it "cannot be brought under § 2254").

Any of Petitioner's allegations not specifically addressed herein have been found to be without merit.

## IV.     Certificate of Appealability

This Court should grant an application for certificate of appealability only if the Petitioner makes "a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).   To make such a showing "the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000); *see also Lamarca v. Secretary Department of Corrections*, 568 F.3d 929, 934 (11th Cir. 2009).   When a district court dismisses a federal habeas petition on procedural grounds without reaching the underlying constitutional claim, a certificate of appealability should issue only when a petitioner shows "that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Id*; *Lamarca*, 568 F.3d at 934.   However, a prisoner need not show that the appeal will succeed.  *Miller-El v. Cockrell*, 537 U.S. 322, 337 (2003).

Petitioner has not demonstrated that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong.  Moreover, Petitioner cannot show that jurists of reason would find this Court's procedural rulings debatable.   Petitioner has failed to make a substantial showing of the denial of a constitutional right.   Thus, the Court will deny Petitioner a certificate of appealability.

Accordingly, it is **ORDERED AND ADJUDGED** as follows:

1.    The Petition for Writ of Habeas Corpus (Doc. 1) filed by Thomas Joseph Cutaia is

**DENIED**, and this case is **DISMISSED WITH PREJUDICE**.

2.    Petitioner is **DENIED** a Certificate of Appealability.

3.    The Clerk of the Court is directed to enter judgment accordingly and close this case.

**DONE AND ORDERED** at Orlando, Florida, this 19th day of September, 2011.

_____
GREGORY A. PRESNELL
UNITED STATES DISTRICT JUDGE

Copies to:

OrlP-4 9/19

Thomas Joseph Cutaia